# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **CRYSTAL CLEAR SPECIAL UTILITY DISTRICT,** *Plaintiff* | § § § § | |
| | § | **No. 1:22-CV-01293-RP** |
| **v.** | § § | |
| **PETER LAKE, WILL MCADAMS, LORI COBOS, JIMMY GLOTFELTY, KATHLEEN JACKSON in their official capacities as COMMISSIONERS OF THE PUBLIC UTILITY COMMISSION OF TEXAS,** *Defendants* | § § § § § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court is River Bridge Ranch, LLC's Motion and Notice of Intervention, Dkt. 4, and all associated filings. This motion was referred by the district court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.      BACKGROUND

River Bridge Ranch, LLC, moves the court to intervene as a matter of right in this cause of action. This case involves Crystal Clear Special Utility District's request to have the Public Utility Commission restrained from granting petitions by River

Bridge Ranch, LLC, and Lennar Homes of Texas Land and Construction, Ltd., for streamlined expedited release and decertification from CCSUD's certificated water service area under PUC Docket Nos. 52889 and 53425. Dkt. 4 at 2. River Bridge Ranch asserts that it has a significant interest relating to the properties which are being petitioned by River Bend Ranch and Lennar for decertification from CCSUD's Certificate of Convenience and Necessity. *Id.*

CCSUD is the recipient of a loan issued by the United States Department of Agriculture, Rural Development, under 7 U.S.C. §§ 1921 *et seq.* The debt was issued in 2012 and remains outstanding. The Federal Loan was in the original amount of $3.2 million to CCSUD, under the authority of 7 U.S.C. § 1926.

7 U.S.C. § 1926(b) provides protection to recipients of federal funds under § 1926(a). Section 1926(b) provides as follows:

> Curtailment or limitation of service prohibited. The service provided or made available through any such [federally-indebted] association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body ....

7 U.S.C. § 1926(b).

In PUC Docket 52889, River Bridge Ranch, LLC, filed an application with the PUC for expedited decertification of a 44.897-acre tract and a 463.204-acre tract within Guadalupe and Hays Counties from CCSUD's water CCN No. 10297. The application was a request by River Bridge Ranch to remove certificated service area from CCSUD's water CCN. River Bend Ranch sought, pursuant to § 13.2541 of the Texas Water Code, authority from the PUC to have CCSUD replaced as the provider of water service within the two tracts. The two tracts were properly certificated to

CCSUD at the time its Federal Loan was funded and at the time River Bend Ranch filed its initial application.

Subsequently, River Bridge Ranch sold the 44.897-acre tract and 328.85 acres of the 463.204-acre tract to Lennar Homes of Texas Land and Construction, Ltd. River Bend Ranch then amended its application in PUC Docket No. 52889 to apply solely to its remaining 134.1-acre tract within CCSUD's water service area. At the same time, River Bridge Ranch's attorneys filed an application on behalf of Lennar Homes with the PUC in new PUC Docket 53425 for expedited decertification of the 44.897-acre tract and the 328.85-acre tract purchased from River Bridge Ranch from CCSUD's water CCN No. 10297. Like the prior application by River Bridge Ranch, Lennar Homes' application requested to remove certificated service area from CCSUD's water CCN. Lennar Homes also sought, pursuant to § 13.2541 of the Texas Water Code, authority from the PUC to have CCSUD replaced as the provider of water service within the two tracts.

In PUC Docket 52889, a PUC Administrative Law Judge concluded that the tract at issue was within CCSUD's CCN water service area; however, the ALJ also recommended that the PUC grant River Bridge Ranch's amended application in full. Similarly, in PUC Docket 53425, the PUC Administrative Law Judge also concluded that the tracts at issue were within CCSUD's CCN water service area; however, again the ALJ recommended that the PUC grant Lennar Homes' application in full.

Section 13.2541 of the Texas Water Code instructs PUC Officials that they cannot deny a petition for decertification as circumscribed by the federal law outlined

above in 7 U.S.C. § 1926(b), specifically stating: "The utility commission may not deny the petition based on the fact that the certificate holder is a borrower under a federal loan program." Tex. Water Code § 13.2541(d).

CCSUD argues that § 1926(b) protects it from having its service area curtailed or limited by various means, including decertification, and that the Texas Water Code § 13.2541 instructing the PUC Officials that they cannot deny a petition for decertification based on such federal law, is in direct conflict. CCSUD maintains that Texas Water Code § 13.2541(d) violates the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, and therefore cannot be enforced.

In its Original Complaint, Dkt. 1, CCSUD sued the members of the Public Utility Commission in their official capacities, arguing that Texas Water Code § 13.254l(d) is in direct conflict with federal law, 7 U.S.C. § 1926, and requesting injunctive and declaratory relief that Texas Water Code § 13.2541(d) is unconstitutional and that the PUC Officials cannot decertify property from CCSUD's certificated area under Texas Water Code § 13.2541 in reliance on § 13.2541(d).

River Bridge Ranch argues it has a right to intervene in this case, as its interests are directly affected by the outcome. In its motion, it asserts that, after CCSUD conducted engineering studies about providing water services to the properties in issue, it concluded significant infrastructure improvements, along with impact fees, costing over $12,000,000.00, would be required to provide water to the properties in order to develop them, and that water would not be available until late 2023 or early 2024. River Bridge Ranch asserts that it filed its PUC petitions because

it determined CCSUD's system was economically prohibitive, and the outcome of this suit affects that petition.

CCSUD asserts that it has water lines immediately adjacent to River Bridge Ranch's property and is capable of providing service in the property's currently undeveloped state if requested by River Bridge Ranch. Additionally, CCSUD points out that River Bridge Ranch's decertification request has been granted by the PUC, and that any interest it might have in this litigation is indirect and that the PUC can adequately represent any interest it might have.

## II.    LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure provides for two methods by which a non-party may intervene as of right, stating:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). River Bridge Ranch seeks to intervene in the above numbered and styled cause as of right pursuant to and in accordance with Federal Rule of Civil Procedure 24(a)(2).

If the right to intervene is not granted by some other federal statute, *see* Fed. R. Civ. P. 24(a)(1), a party can still intervene if it satisfies the four elements of Rule 24(a)(2):

(1) the application for intervention must be timely[1];

---

[1] The parties do not dispute that the motion is timely.

(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)).

It is the movant's burden to establish the right to intervene, but "Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "Federal courts should allow intervention 'where no one would be hurt and the greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). "A ruling denying intervention of right is reviewed de novo." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas*, 805 F.3d at 656).

## III.     DISCUSSION

### A.     Legally Protectable Interest

The first issue the undersigned must decide is whether River Bridge Ranch claims a legally protectable interest relating to the subject of the action. River Bridge Ranch argues that it is a landowner whose property is subject to the PUC Docket Items that are the subject of this case, and that its money in escrow related to the sale of its properties to Lennar Homes is impacted by the outcome. Additionally, it

argues that its decertification actions before the PUC would be affected by the issuance of any injunctive relief.

"The precise definition of an 'interest' has been hard to pin down, but we have interpreted Rule 24(a)(2) to require a 'direct, substantial, legally protectable interest in the proceedings.'" *La Union*, 29 F.4th at 306 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996)). The Fifth Circuit has explained, "property interests are the quintessential rights Rule 24(a) protects, but we have made clear that Rule 24(a)(2) does not require 'that a person must possess a pecuniary or property interest to satisfy the requirement of Rule 24(a)(2).'" *Id.* (quoting *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987)). Nor does a "legally protectable interest" mean the interest must be "legally enforceable"; rather "[a]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* (quoting *Texas*, 805 F.3d at 659).

The Fifth Circuit recently stated:

> Generally, we will not grant intervention of right for purely "ideological, economic, or precedential" reasons. *La Union*, 29 F.4th at 306 (quoting *Texas*, 805 F.3d at 658). However, "economic interests can justify intervention when they are directly related to the litigation." *Wal-Mart*, 834 F.3d at 568 (citing *Espy*, 18 F.3d at 1207). For example, a scheme's "prospective interference with [economic] opportunities can justify intervention." *Black Fire Fighters Ass'n of Dallas v. City of Dallas*, 19 F.3d 992, 994 (5th Cir. 1994) (finding an interest where a decree threatened promotion opportunities); *see also Edwards*, 78 F.3d at 1004 (finding an interest where a decree threatened "equal access to a promotion system and promotion opportunities"); *Brumfield*, 749 F.3d at 343 (finding an interest where a potential decree threatened "equal access to" educational "opportunities"). Moreover, we have found the "intended beneficiary of a government regulatory system" has a legally

protected interest in a case challenging that system. *Wal-Mart*, 834 F.3d at 567-69; *see also Texas*, 805 F.3d at 660.

*NextEra Energy Capital Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *3 (5th Cir. Dec. 7, 2022) (per curium) (unpublished), *petition for cert. filed*, 2022 WL 18089507 (U.S. Dec. 28, 2022).

River Bridge Ranch asserts it has a substantial interest in the transaction that is the subject matter of his litigation because "RBR is the landowner whose property is being held hostage by CCSUD's certificated service area, precluding RBR from exercising its ability to access water service by other utility providers who are capable of delivering service … in a reasonable period of time." Dkt. 4, at 8. River Bridge Ranch also argues that in its sale of property to Lennar, Lennar placed $5,211,000.00 of the purchase price in escrow based on the cost to get water services to the property, and that agreement is impacted by the PUC's decertification decision. *Id.* River Bridge Ranch maintains that a CCN is a restriction placed on property, as long as CCSUD is federally indebted, and CCSUD's injunction would bar River Bridge Ranch from seeking any kind of decertification, thereby affecting its property interests. Dkt. 12, at 3.

CCSUD argues that River Bridge Ranch's interest in this litigation is merely an indirect economic interest. Dkt. 11, at 3. CCSUD maintains that River Bridge Ranch's interest is based on the costs of obtaining water services for development; but that, the increased costs of utility extension including infrastructure upgrades, will occur no matter which entity provides those services, and merely claiming that it can get those services cheaper from a different and preferred provider is

insufficient. *Id.* at 4. And, it argues, the properties in issue are as yet undeveloped, and CCSUD is capable of providing water to the property in its current status. *Id.* Lastly, Crystal Clear argues that any contract with Lennar that is contingent on the decertification by the PUC is a "side deal" and "gamble" that the Court will ultimately find against plaintiff CCSUD's § 1926(b) claims. *Id.* at 4.

River Bridge Ranch replies that, as the landowner, it has a property interest in the outcome of the decertification hearing before the PUC. Dkt. 12, at 1. River Bridge Ranch also argues it invested substantial resources in its action before the PUC, and loss of that investment alone is sufficient to satisfy the legally protected interest requirement. *Id.*

The undersigned finds that *NextEra Energy*, cited above, is instructive in this case. 2022 WL 17492273, at *3. In *NextEra Energy*, the Fifth Circuit panel addressed the issue of intervention in the context of an attack on the constitutionality of a Texas law, Senate Bill 1938. That statute granted the ability to build, own, or operate new electric transmission lines that directly connected to an existing utility facility, only to the owner of that facility, thereby limiting the ability to build transmission lines in Texas to those entities already in the market.

NextEra, a Florida-based builder of transmission lines, who had won a contract to build lines in Texas prior to the enactment of the Texas Statute, sued the PUC, challenged the constitutionality of Senate Bill 1938. Three entities already owning power lines in Texas sought to intervene in the case.  Two other entities, who desired to build power lines in Texas, sought to intervene to challenge the constitutionality

of Senate Bill 1938. The district court denied the intervention motions, finding the "existing parties" adequately represented their issues. On appeal, no party contested that each entity seeking intervention could do so as a matter of right.

The Fifth Circuit reversed the district court finding that all five parties could intervene as a matter of right. With regard to the three Texas utility providers who supported the statute, the court found that Senate Bill 1938 granted them rights of first refusal and "are thus the intended beneficiaries of SB 1938." *Id.* As such, the court held that as the right to first refusal scheme was the subject of the case, each demonstrated a legally protectable interest in the subject matter of the case. *Id.* Similarly, with regard to the entities seeking to intervene to challenge the statute, the court found that Senate Bill 1938 impacted those entities' business opportunities in Texas, and thus they had demonstrated a legally protectable interest related to the subject matter of the case. *Id.*

In this case, entities such as River Bridge Ranch benefit from § 13.2541(d) of the Texas Water Code, as it allows them to request decertification of a utility provider regardless of indebtedness status. Like the utility providers in *NextEra Energy,* River Bridge Ranch is a beneficiary of the Texas Statute. This benefit establishes a legally protectable interest in the subject matter of the underlying suit, which is the constitutionality of the statute.

River Bridge Ranch asserts that its ability to develop its property, which is the subject of the PUC hearing at issue, is impacted by the outcome of the decertification process, thereby establishing another basis for finding a legally protectable interest.

*See Wal-Mart*, 834 F.3d at 567-69; *Texas* 805 F.3d at 660. Like the entities hoping to construct transmission lines in Texas in *NextEra Energy*, a finding that the Texas Statute is unconstitutional impacts River Bridge Ranch's business opportunity to develop its property.

### B.    Whether River Bridge Ranch's Ability to Protect Its Interests Are Impeded or Impaired

River Bridge Ranch next argues that without intervention, disposition of this action impedes or impairs its ability to protect its property and pecuniary interests. Dkt. 4, at 8-9. CCSUD does not directly address this argument in its briefing.

"Though the impairment must be 'practical' and not merely 'theoretical,' the [parties seeking to intervene] need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union*, 29 F.4th at 307 (citing *Brumfield*, 749 F.3d at 344-45). A party's interest in a regulatory scheme "is impaired by the stare decisis effect of the district court's judgment" as to the scheme's validity. *Espy*, 18 F.3d at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992)). In this case, if the district court finds that that Texas Water Code § 13.2541(d) is unconstitutional, River Bridge Ranch's ability to decertify its property from CCSUD will be impaired, thereby potentially delaying development and raising the costs. Thus, River Bridge Ranch has satisfied this prong of the analysis.

### C.   Whether the PUC Adequately Represents River Bridge Ranch's Interest

Lastly, to intervene as a matter of right, River Bridge Ranch must show that representation by the PUC would be inadequate. There are two presumptions of adequate representation. *Brumfield*, 749 F.3d at 345.

The first presumption arises when the intervenor "has the same ultimate objective as a party to the lawsuit." *Texas*, 805 F.3d at 661-62. This presumption can be overcome by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.* (quoting *Edwards*, 78 F.3d at 1005). An intervenor can establish an adversity of interest if "its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662.

The second presumption arises when the existing party "is a governmental body or officer charged by law with representing the interests" of the intervenor, which can be overcome by showing that the intervenor's "interest is in fact different" from that of the" governmental party "and that the interest will not be represented by" the existing governmental party. *Id.* at 661-62 (quoting *Edwards*, 78 F.3d at 1005).

River Bridge Ranch argues that its business interests in having the property decertified from CCSUD's certificated service area is not adequately represented by PUC Officials because they do not stand to suffer pecuniary loss. Dkt. 4, at 10. Additionally, River Bridge Ranch asserts that legal strategies of the PUC and River

Bridge Ranch may differ, as the PUC Officials[2] may be motivated to enter settlement agreements and do not have similar motivations regarding expediency of resolution as River Bridge Ranch. Also, River Bridge Ranch asserts that it has access to its own factual history with CCSUD, upon which it bases its contention that CCSUD does not have the ability to adequately serve River Bridge Ranch and Lennar, thereby supporting judicial economy. *Id.* at 11.

CCSUD responds that River Bridge Ranch and the PUC Officials share the same objective in this case, which is a judgment that they can decertify properties irrespective of federal debt. CCSUD points out that these two entities' objective is the same, even if their motivation differs. The undersigned agrees these two entities share the same ultimate objective.

Thus, in issue is whether they have an "adversity of interests," that "diverge in a manner germane to the case," or whether intervenor's "interest is in fact different from that of the" PUC "and that the interest will not be represented by" the PUC Officials. *Edwards*, 78 F.3d at 1005.  CCSUD maintains that River Bridge Ranch has failed to show that in prior litigation involving this statute, the PUC has conceded liability to plaintiffs, colluded, or neglected to litigate. Dkt. 11, at 6.

In finding that intervening movants' interests diverged from those of the PUC in *NextEra Energy*, the Fifth Circuit stated:

> the Commissioners have many interests in this case, including defending the SB 1938 statewide while also maintaining "its relationship with the federal government," which highly regulates the energy sector, and "with the courts." *Brumfield*, 749 F.3d at 346.

---

[2] River Bridge Ranch notes that counsel for the PUC Officials have consented to its intervention.

> [Movants] on the other hand, are more concerned with protecting their business interests ….

2022 WL 17492273, at *4. The court also pointed out that "[t]he government must represent the broad public interest, not just the economic concerns of [movants]." *Id.* (quoting *Espy*, 18 F.3d at 1208); *see also Brumfield*, 749 F.3d at 346; *La Union*, 29 F.4th at 309).

In this case, much like *NextEra Energy*, the parties contrast their business interest in the outcome of their proceeding before the PUC to the PUC's interest in defending the constitutionality of the statute. Moreover, parties seeking to intervene as of right "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it may be inadequate." *La Union*, 29 F.4th at 307-08 (quoting *Texas*, 805 F.3d at 661-64). This burden is "minimal." *Id.* at 608 (quoting *Edwards*, 78 F.3d at 1005); *see also Wal-Mart*, 834 F.3d at 569. In this case, River Bridge Ranch's heightened interest in expediency is sufficient to show inadequacy of representation. *See Entergy Gulf States La., L.L.C. v. U.S. Env't Prot. Agency*, 817 F.3d 198, 204 (5th Cir. 2016). Moreover, while CCSUD has pointed to aggressive litigation tactics embraced by River Bridge Ranch outside the context of this litigation, it has not shown that intervention would harm the parties in this litigation. Liberally construing Rule 24, the undersigned finds that River Bridge Ranch has met its minimal burden on this issue and intervention should be allowed.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** River Bridge Ranch, LLC's Motion and Notice of Intervention, Dkt. 4. The referral to the undersigned is **CANCELED**.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 5, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE